– NOT FOR PUBLICATION –

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LINDA BRANSFIELD AND LAUREN BRANSFIELD,<br>             Plaintiffs,<br><br>             v.<br><br>NEW JERSEY MANUFACTURERS INSURANCE COMPANY,<br>             Defendant. | CIVIL ACTION<br><br><br><br>NO.  17-0088 |

### MEMORANDUM OPINION

On January 9, 2017, Defendant New Jersey Manufacturers Insurance Company ("NJM") removed this declaratory judgment action from the Pennsylvania Court of Common Pleas, Philadelphia County, pursuant to 28 U.S.C. § 1441 on the basis of diversity jurisdiction.  On January 11, 2017, Plaintiffs Linda Bransfield and Lauren Bransfield filed a motion to remand the case, which the Court granted on January 12, 2017.  Before the Court is NJM's motion to reconsider.  For the following reasons, the motion will denied.

**I.     BACKGROUND**

This case is an insurance dispute.  It arises out of an automobile collision that took place on September 26, 2014, resulting in injuries to Lauren Bransfield.  At the time of the accident, Lauren Bransfield was covered under Linda Bransfield's automobile insurance policy with NJM.  After settling with the other driver and his insurance company for the maximum liability coverage under his policy, Plaintiffs filed the instant lawsuit against NJM seeking only declaratory relief with respect to their entitlement to underinsured motorist ("UIM") benefits from NJM.

When Linda Bransfield originally purchased her single-vehicle policy with NJM in 2003, it provided for up to $300,000 in liability, $100,000 in uninsured motorist ("UM"), and $100,000 in UIM coverage. The only vehicle covered at the time the policy was issued was a 2002 Honda. The policy was renewed with no relevant changes in coverage for several years. However, on December 11, 2006, Linda Bransfield rejected UIM coverage and rejected stacked[1] UIM coverage for the following year. On December 2, 2007, when she next renewed the policy, she also rejected UM and stacked UM coverage. There were no subsequent changes to the coverage limits through the date of the accident.

On several occasions, however, vehicles were added or removed by way of endorsements to the NJM policy. Relevant here is the December 13, 2013, endorsement adding a 1998 Ford to the list of covered vehicles, thereby converting the single-vehicle policy into a two-vehicle policy. At the time of the accident, the policy covered two vehicles.

When the policy was converted to a two-vehicle policy, NJM did not provide Linda Bransfield with additional notice of, or opportunity to, reject her right to receive UIM and stacked UIM coverage with respect to the second vehicle.[2] Despite the fact that the coverage in place at the time of the accident "provided, on its face," no UIM coverage, Plaintiffs now assert that NJM is nonetheless required to provide $300,000 in stacked UIM coverage for two vehicles – for a total of $600,000 in UIM coverage – for failure to comply with the notice and waiver requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa. Comp. Stat. § 1701, *et seq.*

---

[1] "Intra-policy stacking of UIM benefits refers to the multiplication of the limits of UIM coverage under a single automobile insurance policy by the number of vehicles insured by that policy." *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009).

[2] In contrast, subsequent to the original December 2, 2007 rejection of UM coverage, NJM twice gave Linda Bransfield notice of her right to receive UM coverage, which she rejected on December 7, 2009, and again December 13, 2013.

2

## II.  LEGAL STANDARD

Here, the Court granted Plaintiffs' motion to remand before receiving Defendants' response.  Defendants contend that with the benefit of the arguments they make in their motion for reconsideration, the Court will be convinced that its decision to remand was clearly erroneous as a matter of law or fact, or manifestly unjust.  *See Max's Seafood Cafe ex rel. Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

## III.  ANALYSIS

### A.  Discretionary Jurisdiction Under the Declaratory Judgment Act

The basis for removal in this case is diversity jurisdiction.  There is no dispute that the parties are diverse and that the amount in controversy exceeds the jurisdictional amount.  Plaintiffs' Complaint, however, contains only one count, which seeks declaratory relief as to a question of state law.  By virtue of the relief sought, it is undisputed that this case falls within the scope of the Declaratory Judgment Act ("DJA").  28 U.S.C. § 2201.

The DJA provides that "courts '*may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.'" *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 134-35 (3d Cir. 2014) (quoting 28 U.S.C. § 2201(a)).  Because it grants discretionary, rather than compulsory, jurisdiction to the district court, the DJA has long been recognized as an exception to the general duty that the federal courts have to hear cases over which they have been granted subject matter jurisdiction.  *Id.* (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942); *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 716 (1996)).  Declining to exercise jurisdiction is "authorized 'in the sound exercise of [the district court's] discretion,'" which is "governed by 'considerations of practicality and wise judicial administration.'"  *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S.

277, 288 (1995)).  It is this exercise of discretion in the Court's January 12, 2017 order remanding the action to state court pursuant to 28 U.S.C. § 2201(a) that NJM now challenges.

The Third Circuit is clear that district courts should be reluctant to exercise DJA jurisdiction "when the state law involved is close or unsettled," in that "they do not establish state law, but are limited to predicting it," a concern that it identified as "especially important in insurance coverage cases."  *State Auto Ins. v. Summy*, 234 F.3d 131, 135 (3d Cir. 2000), *as amended* (Jan. 30, 2001).  Further, the Third Circuit has articulated a non-exhaustive list of factors that should guide a district court in determining whether to exercise its discretionary jurisdiction under the DJA, including the likelihood that a federal court declaration will resolve the uncertainty of obligation which gave rise to the controversy, and a general policy of restraint when the same issues are pending in a state court.  *Reifer*, 751 F.3d at 146.

### B.  Relevant Provisions of the MVFRL

The MVFRL sets forth several provisions governing the availability of UM/UIM coverage.  75 Pa. Comp. Stat. §§ 1731 to 1738.  In particular, Section 1731(a) "mandates that an insurance company issuing a policy in the Commonwealth of Pennsylvania must provide UM/UIM coverage equal to the bodily injury liability coverage, unless the insured validly rejects UM/UIM coverage . . . ."  *Weilacher v. State Farm Mut. Auto. Ins. Co.*, 65 A.3d 976, 983 (Pa. Super. Ct. 2013).  Section 1731(c) furnishes the required UIM rejection form, while Section 1731(c.1) provides default UIM coverage limits equal to the bodily liability coverage "where the insurer fails to produce a valid rejection form."  75 Pa. Comp. Stat. § 1731(c.1).

Similarly, the MVFRL provides for default stacked UM/UIM coverage, 75 Pa. Comp. Stat. § 1738(a), while also giving insured individuals the option to waive stacking, 75 Pa. Comp. Stat. § 1738(b), provided that they sign the statutorily required stacking rejection form, 75 Pa.

Comp. Stat. § 1738(d).  In the "*Sackett*" line of cases, the Pennsylvania Supreme Court concluded that Section 1738(c) requires new stacking rejection forms when an additional vehicle is added to an existing multi-vehicle policy pursuant to a finite after-acquired vehicle clause.  *See Sackett v. Nationwide Mut. Ins. Co.* ("*Sackett I*"), 919 A.2d 194 (Pa. 2007) (holding that addition of third vehicle to an existing two-vehicle policy is a "purchase" within the meaning of 75 Pa. Comp. Stat. § 1738, thus requiring a new stacking rejection form for an insurer to avoid liability for default stacked UIM coverage), *modified on reh'g*, 940 A.2d 329 (Pa. 2007) ("*Sackett II*") (establishing an exception to *Sackett I* for the addition of a vehicle pursuant to a continuous, open-ended after-acquired vehicle clause)

In a later subchapter titled "Miscellaneous Provisions," the MVFRL also provides for an "Important Notice," which, when signed by an insured in compliance with the statute creates a presumption "that the insured has been advised of the benefits and limits available under this chapter" and indicates that "no other notice or rejection shall be required."  75 Pa. Comp. Stat. § 1791.[3]  However, "in order for the conclusive presumption of Section 1791 to be effective, an insured must have actually selected coverage(s), and the selection process must first be in conformity with the law."  *Motorists Ins. Companies v. Emig*, 664 A.2d 559, 569 (Pa. Super. Ct. 1995) (holding that insurer's failure to comply with Section 1734's requirement that a request for lower UM/UIM coverage be made by an insured in writing rendered the Section 1791 presumption unavailable, despite insurer's production of signed Section 1791 notice).

### C. Plaintiffs' Claim for Declaratory Relief

Plaintiffs' theory in this case hinges on two distinct questions of Pennsylvania law.  The first is whether the MVFRL requires an insurer to obtain new UIM coverage rejection forms

---

[3] Plaintiff's Complaint does not allege that a Section 1791 notice was provided, nor has NJM produced a signed Section 1791 notice in its motion to reconsider.

each time an insured adds a vehicle to a policy.  *See* 75 Pa. Comp. Stat. § 1731(a) ("[n]o motor vehicle liability insurance policy shall be delivered or issued for delivery . . . *with respect to any motor vehicle* . . . unless [UM/UIM] coverages are *offered* . . . ." (emphasis added)).  If so, Plaintiffs argue that NJM's failure to secure a new UIM rejection when a second vehicle was added to the policy entitles them to default UIM coverage in the amount of $300,000 per vehicle.  *See* 75 Pa. Comp. Stat. § 1731(c.1).  The second is whether the insurer is also required to obtain a new UIM stacking rejection when a second vehicle is added to an existing single-vehicle policy pursuant to the *Sackett* line of Pennsylvania Supreme Court cases.  If so, Plaintiffs contend that because NJM failed to secure a new UIM stacking waiver when the second vehicle was added to the policy, they are entitled to stack the $300,000 in default UIM coverage on each of the two vehicles on the NJM policy at the time of the accident, yielding a total of $600,000 in UIM coverage.

Whether the Court's decision not to exercise jurisdiction over this declaratory judgment action was clearly erroneous or manifestly unjust turns in large part on whether these two questions are a matter of clearly settled Pennsylvania law.  Each is addressed in turn.

    **i.**   **Were new UIM rejection forms required when second vehicle was added?**

As NJM points out, the first question is truly a threshold matter: before determining whether Plaintiffs are entitled to stacking pursuant to the *Sackett* line of cases, it would be necessary to ascertain whether they are entitled to UIM coverage at all.  If not, then there is no UIM coverage available to stack.  In support of its contention that it would be appropriate for this Court to retain jurisdiction, NJM asserts that it is a settled matter of Pennsylvania law that no subsequent rejection form is required in these circumstances.  Nevertheless, NJM has not cited, nor has the Court found, any Pennsylvania cases directly addressing the narrow question of

whether the MVFRL requires a new UIM rejection form when a second vehicle is added to an existing single-vehicle policy.

Instead, NJM points to two recent federal district court opinions in diversity cases where, faced with the same question, the courts predicted that the Pennsylvania Supreme Court would answer the question in the negative. *Glazer v. Nationwide Mut. Ins. Co.*, 872 F. Supp. 2d 396 (M.D. Pa. 2012); *Allstate Prop. and Cas. Ins. Co. v. Gierlach*, No. 2:13-cv-6992015, 2015 WL 5286179, *1 (W.D. Pa. Sept. 10, 2015). Central to both is an analysis of an earlier Pennsylvania Superior Court opinion, *Smith v. Hartford Ins. Co.*, 849 A.2d 277 (Pa. Sup. Ct. 2004), and approving comments the Pennsylvania Supreme Court made regarding the *Smith* opinion in *Sackett I*, suggesting that a valid UIM rejection waiver carries forward until affirmatively changed. *Glazer*, 872 F. Supp. 2d at 402 ("The holding of *Smith*—endorsed by the Pennsylvania Supreme Court in *Sackett I*—is ultimately compelling to the instant matter: that a decision to reject UIM benefits carries forward until affirmatively changed." ); *Gierlach*, 2015 WL 5286179, at *2 ("The Supreme Court of Pennsylvania reinforced the holding in *Smith* when it determined that the addition of a vehicle to a policy wherein UIM coverage was previously waived in accordance with Sections 1731 and 1791 was not analogous to the case of insureds waiving stacking when vehicles were added to a policy that still included UIM coverage." (citing *Sackett I*)). However, a closer analysis of *Smith* and *Sackett I* demonstrates that the MVFRL's waiver requirements in this situation are not a matter of clearly settled Pennsylvania law, and thus, do not support this Court's exercise of jurisdiction.

Initially, it bears observation that *Smith v. Hartford Ins. Co.* arose on a distinct set of facts. The insured had originally purchased a single-vehicle insurance policy that included UIM coverage, but several months later, he executed a rejection of UIM coverage form. 849 A.2d at

7

279.  At no point thereafter did the insured add another vehicle to the policy.  *Id.*  Consequently, *Smith* did not address whether the addition of a second vehicle to an existing single-vehicle policy necessitates a new UIM rejection form for an insurer to avoid default UIM coverage.  Instead, *Smith* dealt with whether the insured's voluntary increase in liability coverage from $300,000 to $500,000 in conjunction with the purchase of an umbrella policy required an additional UIM rejection form.  *Id.*  Concluding in part that imposing such a requirement would conflict with the plain language of the provision in Section 1791 that where notice has been provided pursuant to that subsection, "no other notice or rejection shall be required," *Smith* held that the increase in liability coverage under an existing single-vehicle policy did not necessitate an additional UIM rejection form.  *Id.* at 281.  Plainly, then, *Smith* did not foreclose Plaintiffs' argument that the addition of a new vehicle to an existing policy constitutes a "delivery" of a "motor vehicle liability insurance policy . . . with respect to any motor vehicle . . ." that would trigger the Section 1731 requirements for a valid rejection of UIM coverage.  Even if it did, there is no evidence in the record to suggest a signed Section 1791 waiver exists, and so the rationale in *Smith* cannot be invoked at this juncture.

Moreover, although the Pennsylvania Supreme Court in *Sackett I* later characterized *Smith* as holding that "a decision to waive all UIM coverage is presumptively effective throughout the life of the policy unless an affirmative change has been made" – and went so far as to state that the holding was "required by the relevant statutory language of Sections 1731 and 1791," *Sackett I*, 919 A.2d 194, 198 (Pa. 2007) – those statements were pure *dicta*.  The *Sackett* cases involved the rejection of stacking requirements when new vehicles are added to a multi-vehicle policy *with* UM/UIM coverage pursuant to Section 1738, rather than the wholesale UM/UIM waiver provisions found in Section 1731 of the MVFRL.  Because "[t]he addition of

8

another vehicle to a policy *with* UM/UIM coverage raises different concerns than those addressed by Sections 1731 and 1791," the *Sackett I* Court observed that *Smith* had "no bearing on the outcome" in that case.  919 A.2d at 198.  In any event, because the Sacketts never rejected UIM coverage, the threshold question posed in this case – whether a properly executed UIM rejection form survives the addition of a new vehicle to the policy – was certainly not before the Pennsylvania Supreme Court in the *Sackett* cases.

Therefore, NJM's contention that the threshold question here involves the application of clearly settled Pennsylvania law must be rejected.  Instead, if jurisdiction is retained, this Court would have to do what the *Glazer* and *Gierlach* Courts did – predict how the Pennsylvania Supreme Court would rule as to the threshold legal issue of whether there is any UIM coverage available to Plaintiffs.

### ii. If default UIM coverage is available, may it be stacked?

If Plaintiffs were to clear the threshold question by demonstrating an entitlement to default UIM coverage, the Court would next have to determine whether it may be stacked pursuant to *Sackett I* and *Sackett II*.  As has been seen, on December 11, 2006, at the same time that she waived UIM coverage, Linda Bransfield also signed a rejection of stacked UIM coverage.  However, no stacking rejection was signed when she added a second vehicle to the policy by a later endorsement, thereby converting the original single-vehicle policy into a multi-vehicle policy.

The MVFRL provides stacked underinsured motorist coverage by default, but stacking may be waived provided that a valid rejection form is executed.  75 Pa. Cons. Stat. § 1738.  In *Sackett I*, the Pennsylvania Supreme Court held that the addition of a third vehicle to an existing multi-vehicle policy where the insured had waived stacking was a "purchase," thereby requiring

the execution of a new stacking rejection form for a valid waiver of stacked coverage under 75 Pa. Cons. Stat. § 1738. 919 A.2d at 201-02. On rehearing, the Pennsylvania Supreme Court in *Sacket II* modified that holding by clarifying that "the extension of coverage under an after-acquired-vehicle provision to a vehicle added to a pre-existing multi-vehicle policy is not a new purchase of coverage . . . and thus, does not trigger an obligation on the part of the insurer to obtain new or supplemental UM/UIM stacking waivers." 940 A.2d at 334. In contrast, "where coverage under an after-acquired-vehicle clause is expressly made finite by the terms of the policy . . . *Sackett I* controls and requires the execution of a new . . . stacking waiver upon the expiration of the automatic coverage in order for the unstacked coverage option to continue." *Id.*

Critically for the instant case, *Sackett II* purported to limit its holding to "the scenario involving the addition of a vehicle to a multi-vehicle policy," and expressly stated "[w]e do not resolve the Sacketts' arguments concerning situations involving additions to single-vehicle policies." *Id.* at 334, n.5. To date, the Pennsylvania Supreme Court has yet to address the extent to which the *Sackett* holdings apply when additional vehicles are added to existing single-vehicle polices. The Third Circuit has predicted the Pennsylvania Supreme Court would extend *Sackett II* to single-vehicle policies. *State Auto Prop. & Cas. Ins. Co. v. Pro Design, P.C.*, 566 F.3d 86, 89 (3d Cir. 2009); *see also Seiple v. Progressive N. Ins. Co.*, 568 F. App'x 183, 186 (3d Cir. 2014) (applying *Sackett II* to addition of vehicle to a single-vehicle policy without analysis of whether the Pennsylvania Supreme Court would do so). However, Plaintiffs point out that an appeal in another case currently pending before the Pennsylvania Supreme Court, *Toner v. The Travelers Home & Marine Ins. Co.*, 137 A.3d 583 (Pa. Super. 2016), *app. granted*, No. 29 WAP 2016, (Pa. Sept. 8, 2016), has directly raised the issue. Accordingly, the applicability of the *Sackett* cases to the facts of this case – and the resulting availability of stacked UIM coverage –

is not a clearly settled matter of Pennsylvania law.  Moreover, the retention of jurisdiction could result in a disposition that is inconsistent with the outcome reached in a matter currently pending before the Pennsylvania Supreme Court.

Accordingly, retaining jurisdiction in this case would require the Court to make a threshold determination as to the unsettled question of whether the MVFRL requires new UIM rejection forms when new vehicles are added to an existing policy.  In the event that question is answered in the affirmative, the Court would next have to predict whether stacked UIM coverage is available pursuant to the *Sackett* cases where a second vehicle is added to an existing single-vehicle policy – an issue currently pending before the Pennsylvania Supreme Court.  Given the Third Circuit's admonition that "[w]here state law is uncertain or undetermined, the proper relationship between federal and state courts requires district courts to 'step back' and be 'particularly reluctant' to exercise DJA jurisdiction," *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 148 (3d Cir. 2014) (quoting *State Auto Ins. v. Summy*, 234 F.3d 131, 135-36 (3d Cir. 2000), *as amended* (Jan. 30, 2001)), it was neither clearly erroneous nor manifestly unjust to remand this matter to the Court of Common Pleas of Philadelphia County.

An appropriate order follows.

Dated:  February 23, 2017.

**BY THE COURT:**

**/S/WENDY BEETLESTONE, J.**

_____

**WENDY BEETLESTONE, J.**